# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

KELVIN NTOKOZO MATOBELA,     )
                                )
     **Petitioner,**               )
                                )
     **v.**                            )         **Case No. CIV-26-156-SLP**
                                )
**SCARLET GRANT, et al.,**       )
                                )
     **Respondents.**           )

## REPORT AND RECOMMENDATION

Petitioner Kelvin Ntokozo Matobela, a citizen of Zimbabwe proceeding with counsel, filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 ("Petition") challenging his detention by the U.S. Immigration and Customs Enforcement ("ICE").[1] (Doc. 1).[2]  Chief United States District Judge Scott L. Palk referred the matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B), (C).  (Doc. 3).  In accordance with the briefing schedule, (Doc. 6), Respondents timely filed a response.[3]  (Doc. 8).  Petitioner timely filed a reply.  (Doc. 9). The undersigned ordered the parties to file supplemental briefing, (Doc. 10), and Petitioner,

---

[1] Petitioner is housed at Cimarron Correctional Facility in Cushing, Oklahoma.  (Doc. 1, at 4).

[2] Citations to the parties' filings and attached exhibits will refer to this Court's CM/ECF pagination.

[3] The response was not filed on behalf of Respondent Scarlet Grant, Warden of the Cimarron Correctional Facility.  (Doc. 8, at 2).  The undersigned concludes that a separate response from Warden Grant is not necessary to resolve this matter.

(Doc. 11), and Respondents, (Doc. 12), filed supplemental briefs.  As fully set forth below, the undersigned recommends that Petitioner be **GRANTED** habeas relief and released from custody immediately under the terms of his previous Order of Supervision.

## I.    Factual Background

Petitioner is a citizen of Zimbabwe who entered the United States on a tourist visa in 1996, providing him with permission to remain in the country for six months.  (Doc. 1, at 1; Doc. 8, at Ex. 1, at 1, 2).  Petitioner remained in the United States, and he contends he approached the United States Department of Homeland Security ("DHS") in 2009 to seek possible relief from removal.  (Doc. 1, at 1).  DHS took Petitioner into custody and initiated removal proceedings by issuing a Notice to Appear on March 31, 2009, alleging he remained in the United States for a time longer than permitted after admission.  (*Id.*; Doc. 8, at Ex. 2, at 3).  On April 7, 2009, Petitioner was released from custody on a $5,000 bond. (Doc. 1, at 1; Doc. 8, at Ex. 3).  On November 7, 2011, an Immigration Judge ordered Petitioner removed to Zimbabwe.  (Doc. 1, at 2; Doc. 8, at 3; *id.* at Ex. 4, at 6).  The Board of Immigration Appeals ("BIA") dismissed his appeal on November 30, 2012.  (Doc. 1, at 2; Doc. 8, at Ex. 5, at 2-3).  His bond was subsequently cancelled.  (Doc. 8, at Ex. 6).

Petitioner was detained by immigration authorities after his arrest on April 27, 2017. (Doc. 8, at 3; *id.* at Ex. 1, at 2).  On July 26, 2017, Petitioner was released from custody on an order of supervision.  (Doc. 8, at 4; *id.* at Ex. 7).  The order of supervision was "granted for a period of 6 months" and provided that if Petitioner failed to depart the country within that time he would be taken back into ICE custody, although the six-month period could be extended.  (Doc. 8, at Ex. 7, at 6).  Petitioner was taken into custody by DHS at his

regular check-in in December 2025.  (Doc. 1, at 2, 3; *see also* Doc. 8, at 4).  He alleges he did not receive notice or a reason for his detention.  (Doc. 1, at 3).

## II.    Petitioner's Claims and Respondents' Responses

Petitioner generally asserts that "allowing re-detention in the absence of new facts would render the initial bond or supervisory release determination meaningless and permit indefinite, cyclical detention, a result inconsistent with the regulatory scheme and constitutional norms."  (Doc. 1, at 6).  In Count I, Petitioner alleges that his re-detention violated his due process rights under the Fifth Amendment.  (*Id.* at 6-7).  Petitioner painted this claim with broad strokes.  He argued that: (1) "immigration detention must be reasonably related to a legitimate governmental purpose and accompanied by fundamentally fair procedures;" (2) re-detention "requires heightened procedural and substantive justification;" (3) "re-detention without notice or new justification bears no rational relationship to ensuring appearance at proceedings or protecting the community," but instead "operates as punishment for past conduct or procedural posture;" and (4) "Respondents have provided no legitimate basis to re-detain the Petitioner."  (*Id.*)  The only relevant facts Petitioner alleges are that "there has been no change in conditions or violations of the conditions of his release" and that he "received no notice nor was he given any reason why he was being detained" prior to his December 2025 detention.  (*Id.* at 2-3).  Petitioner did not provide any legal authority in support of his claim.

In Count II, Petitioner alleges that "re-detention absent materially changed circumstances violates 8 C.F.R. § 236.1(c)."  (*Id.* at 7).  As relief, Petitioner asks the Court to "declare that [his] detention violates the Due Process Clause of the Fifth Amendment,

and 8 C.F.R. § 236.1(c)" and to order Petitioner's immediate release. (*Id.*) Petitioner also requests an award of attorney fees and costs under the Equal Access to Justice Act ("EAJA").[4] (*Id.*)

Faced with responding to a broad and unsupported due process claim, Respondents made three arguments. First, they asserted there is no due process violation because Petitioner is subject to an order of removal and had not been detained for longer than the presumptively reasonable period of six months under *Zadvydas*, 633 U.S. 678.[5] (Doc. 8, at 6-7). Next, they argued that if Petitioner intended to bring a substantive due process claim, it fails because Petitioner must allege facts that shock the conscience when challenging executive action. (*Id.* at 7-8). And focusing on Petitioner's argument that his re-detention "operates as punishment," (Doc. 1, at 6), Respondents argue that Petitioner set forth "no specific facts demonstrating punishment directed at him." (Doc. 8, at 9). Further, they contend that "because [Petitioner] has been ordered removed, and because there is a substantial likelihood of removal in the reasonably foreseeable future, [he] represents a greater flight risk than an alien whose removal proceedings are only pending." (*Id.*)

---

[4] To the extent Petitioner may be entitled to EAJA fees and costs as a prevailing party, he must seek those separately after a final judgment. 28 U.S.C. § 2412(d)(1)(B); *see also Daley v. Ceja*, 158 F.4th 1152, 1166 (10th Cir. 2025) (interpreting "EAJA's broad language to unambiguously authorize fees in habeas actions challenging immigration detention"). Accordingly, the Court need not address this request at this juncture.

[5] While the undersigned agrees with Respondent regarding the removal order and length of detention, the argument is not related to any facts or arguments plausibly made in the Petition.

Additionally, Respondents contend that (1) Petitioner did not state a claim in Count II because he did not provide fair notice of the claim or its grounds, (*id.* at 10-12); (2) Count II alleges a regulatory violation, which is not a proper basis for habeas relief, (*id.* at 12-13); (3) Petitioner did not properly allege a violation of the Suspension Clause, (*id.* at 13-14); and (4) the Court should not grant relief under the Declaratory Judgment Act, (*id.* at 14-15).

Petitioner's due process argument switched tracks in the reply brief. There, he primarily argued that Respondents "have not complied with the requirements for post removal re-detention as set out in 8 C.F.R. § 241.13(i)(3 )" because "Respondents, in their response in opposition to the Petition for Writ of Habeas Corpus, do not address their failure to comply with the statutory requirements for re-detention of the Petitioner in December 2025 which is to include 'Notice of Revocation of Release.'" (Doc. 9, at 1). He also alleges Respondents "faile[d] to justify the arbitrary re-detention of the Respondent in December 2025 when they still had not obtained any travel documents or agreement with Zimbabwe." (*Id.* at 2). Thus, Petitioner argues that his re-detention "does not meet the requirements under 8 C.F.R. § 241.13(i) for someone who is going to be removed in the reasonably foreseeable future." (*Id.* at 3). Petitioner also complains that Respondents' argument regarding the likelihood of his removal to Zimbabwe "does not explain why the re-detention was done in December and done without due process." (*Id.*) Petitioner further contends that "federal courts have routinely rejected arbitrary re-detention absent new facts." (*Id.* at 2). Finally, Petitioner contends for the first time that he is not removable

because he filed a motion to reopen his removal proceedings and stay deportation. (*Id.* at 4).

On February 27, 2026, the undersigned ordered supplemental briefing. (Doc. 10). The undersigned noted that "Petitioner's Due Process claim does little more than provide counsel's general thoughts and arguments on why civil detention must comport with due process" and "provide[d] no law in support." (*Id.* at 1). Further, the undersigned observed that Petitioner's "three-sentence regulatory claim" related to 8 C.F.R. § 236.1 cited no case law or other support. (*Id.* at 1-2). This was problematic because "the regulation itself does not even contain the term 'materially changed circumstances.'" (*Id.* at 2). Noting that 28 U.S.C. § 2241(c)(3) places the burden on Petitioner in habeas cases, the undersigned found that the "current briefing is woefully insufficient to inform the Respondents and the Court of his legal theories and to guide the undersigned to the applicable law and facts of this case." (*Id.*) Rather than recommend the matter be dismissed, the undersigned ordered Petitioner to file a supplemental brief by March 13, 2026. (*Id.* at 2-3). The undersigned specifically instructed Petitioner "not to address any claims that were raised for the first time in his Reply." (*Id.* at 3 n.1).

In supplemental briefing, Petitioner argues that "Petitioner's re-detention without notice or changed circumstances is a violation of Petitioner's due process rights." (Doc. 11, at 5). In support, Petitioner raises some arguments first made in reply regarding a violation of 8 C.F.R. § 241.13, contending:

- Respondents have not alleged that Petitioner violated the terms and conditions of his release, (*id.*);

- Respondents have not provided any evidence that they conducted an initial interview or afforded Petitioner an opportunity to respond to the reasons for the revocation as prescribed by the agency's own regulations, (*id.* at 6);

- His detention is unlawful because Respondents did not follow the requirements for revocation of Petitioner's order of supervision, (*id.*); and

- Respondents do not have travel documents or authorization to return Petitioner to Zimbabwe, and Respondents' assertion that Zimbabwe is willing to accept citizens is speculative and insufficient to revoke his order of supervision, (*id.* at 6-7).

Petitioner also asserts again that nothing in his history suggests he is a flight risk or a danger to the community. (*Id.* at 7).

Petitioner also argues that his "private interest in avoiding unnecessary confinement outweighs the government's interest in continued detention." (*Id.* at 9). He contends that applying the "balancing test articulated in *Mathews v. Eldridge*, 424 U.S. 319 (1976)" should result in a finding "that continued detention without adequate procedural protections violates the Due Process Clause." (*Id.*) The undersigned finds this argument is supplemental to claims raised in the Petition.[6]

Petitioner again argued that he is not removable due to his pending motion with the Board of Immigration Appeals. (*Id.* at 8-9). And, for the first time, he argued that the *Accardi* Doctrine requires an agency to adhere to its own regulations, (*id.* at 8), and that Respondents violated the Administrative Procedure Act, (*id.* at 13).

---

[6] Respondents admit that Petitioner's argument based on the *Mathews* balancing test "might qualify as genuinely supplemental." (Doc. 12, at 12).

Respondents filed a supplemental brief largely arguing that Petitioner failed to follow the directives of the Court in his supplemental brief. (Doc. 12). They also argued the merits of Petitioner's procedural due process claim. (*Id.* at 12-15).

## III. Standard of Review

To obtain habeas corpus relief, Petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001)).

## IV. Analysis

### A. Petitioner's Due Process Rights Have Been Violated, and He Should Be Released Immediately Subject to His Prior Order of Supervision.

The undersigned recommends that the Court grant habeas relief premised upon Petitioner's procedural due process claim related to his re-detention. The reasoning – detailed below – is rather simple. But the process of getting to this conclusion was not simple due to the overly broad formulation of Petitioner's claim that lacked detail at every step in the briefing process. The undersigned nearly recommended dismissal of Petitioner's claim after the first round of briefing because of the way he – through counsel – presented his claim. In the end, however, Petitioner articulated the proper test for a procedural due process claim in his supplemental briefing that related to the due process claim hinted at by the Petition. Utilizing that test and considering the facts presented by the parties in their briefs reveals that Petitioner's due process rights were violated. The

proper remedy is immediate release, subject to the terms of his previous order of supervision.

Courts examine procedural due process claims in two steps: (1) is there a protected liberty interest, and (2) if so, what procedures are necessary to ensure deprivation of that protected liberty interest accords with due process. *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). "Freedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty that Clause protects." *Zadvydas*, 533 U.S. at 690.

"Where the government has deprived an individual of a protected interest, we must weigh the following factors to determine whether that individual received due process: (1) 'the private interest that will be affected by the official action'; (2) 'the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards'; and (3) 'the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.'" *McDonald v. Wise*, 769 F.3d 1202, 1213 (10th Cir. 2014) (quoting *Mathews*, 424 U.S. at 335).

> **1.    Factor One: Petitioner Has a Strong Interest in Being Free From Detention.**

With regard to the first factor, Petitioner argues the private interest in avoiding unnecessary confinement is fundamental. (Doc. 11, at 9-10). He asserts that immigration detention represents a serious restraint on liberty and that indefinite detention of non-citizens raises serious constitutional concerns. (*Id.* at 10) (citing *Zadvydas*, 533 U.S. 678).

He also asserts that "even brief periods of unlawful detention constitute[s] a substantial liberty deprivation." (*Id.*) (citing *Foucha v. Louisiana*, 504 U.S. 71 (1992)).  He contends that his "detention has already extended beyond the period reasonably necessary to accomplish the government's immigration objectives." (*Id.*)  Petitioner also points out that he has not been removed since his final order of removal and the government had not obtained a travel document at the time of his re-detention. (*Id.*)

Respondents assert that Petitioner's interest must be looked at through the lens of an individual who is no longer entitled to remain in the United States and that detention during deportation proceedings is generally constitutionally valid. (Doc. 12, at 12-13).  They also argue that Petitioner can "free himself" by leaving the United States. (*Id.* at 13).

The undersigned finds Petitioner has a strong liberty interest in being free from detention. *See Zadvydas*, 533 U.S. at 690.  While Respondents correctly assert that Petitioner has been ordered removed and is not entitled to remain in the United States, he was previously released because there was no significant likelihood of removal in the reasonably foreseeable future. (*See* Doc. 8, at Ex. 7, at 2) (placing Petitioner on an order of supervision "because the Service has not effected your deportation or removal during the period prescribed by law"); *Bui v. Bondi*, No. CIV-26-91-J, 2026 WL 788947, at *3 (W.D. Okla. Mar. 20, 2026) ("[C]ourts have concluded that this exact language signals the individual was released because the government made a determination that there was no significant likelihood of removal in the reasonably foreseeable future.").  Petitioner's liberty interest is strengthened by the over eight-year period he was released on an order of supervision after his post-removal-period detention ended. *See Le Nguyen v. Bondi*, No.

10

2:25-CV-01198 KWR-JMR, 2026 WL 892491, at *7 (D.N.M. Mar. 31, 2026) (finding "the first *Mathews* factor heavily favor[ed] Petitioner" when he "lived in the United States under an Order of Supervision for twenty years" and "8 C.F.R. § 241.4(l) and § 241.13(i) provide the procedure for revoking and detaining a person under an Order of Supervision"); *Yang v. Kaiser*, No. 2:25-CV-02205-DAD-AC (HC), 2025 WL 2791778, at *8 (E.D. Cal. Aug. 20, 2025) (finding "petitioner has a strong private interest in his continued release" where he "was released in 2018 prior to being re-detained in 2025, during which time he was employed and living with his family").

> **2.    Factor Two: 8 C.F.R. § 241.13(i) Was Promulgated to Prevent Erroneous Re-Detention and the Government Not Did Follow the Regulation.**

As to the second factor, Petitioner argues that "where detention occurs without meaningful review, the risk of error is substantial." (Doc. 11, at 11). Petitioner contends – without citation to law – that "courts have repeatedly recognized that civil detention decisions may rely on incomplete information, outdated records, or speculative assumptions about removability or flight risk." (*Id.*) He contends that "civil confinement requires heightened procedural protections precisely because of the significant liberty interests involved." (*Id.*) (citing *Addington v. Texas*, 441 U.S. 418 (1979)). He asserts that "additional procedural protections – such as prompt hearings, meaningful judicial review, and the government's burden to justify continued detention – greatly reduce the risk of erroneous detention" and that "these requirements were not utilized in the Petitioner's case nor have the Respondents pointed to any instance where they have." (*Id.*) Respondents

11

only argue that Petitioner did not cite any federal statute or regulation requiring prompt hearings, judicial review, or allocating the burden.  (Doc. 12, at 14).

The undersigned finds this factor favors Petitioner.  Petitioner consistently argued that he did not receive notice of or a reason for his re-detention and that there were no changed circumstances to justify his re-detention.  (Doc. 1, at 3; Doc. 11, at 5).  While Respondent is correct that Petitioner did not cite any federal statutes or regulations that require additional procedures in his discussion of the second factor, the undersigned will not ignore that 8 C.F.R. § 241.13 supplies them.[7]  Petitioner, by arguing that he did not receive notice of the reason for his re-detention and the lack of changed circumstances, effectively argues the government failed to abide by these procedures.

a.    **8 C.F.R. § 241.13(i) Provides Procedures that Prevent the Improper Deprivation of Petitioner's Liberty Interest in Remaining Free from Detention.**

Under 8 C.F.R. § 241.13(i)(1) & (2), an individual who was released under an order of supervision may be returned to custody if he violates his conditions of release, or "if, on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future."  And "upon revocation, the alien will be notified of the reasons for revocation of his or her release," and receive an "initial informal interview promptly . . . to afford the alien an opportunity to respond to the reasons for revocation stated in the notification."  *Id.* § 241.13(i)(3). Further, the alien re-detained "may submit any evidence or information that he or she

---

[7] This is particularly true where Petitioner makes an argument regarding a violation of 8 C.F.R § 241.13 in his discussion of the third *Mathews* factor.

believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision." *Id.* "The revocation custody review will include an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release." *Id.* And notably, "the burden [is] on Respondents to establish a significant likelihood of removal in the reasonably foreseeable future in the context of re-detention under § 241.13(i)(2)." *Pham v. Bondi*, No. CIV-25-1157-SLP, 2025 WL 3243870, at *2 (W.D. Okla. Nov. 20, 2025).

These already-established procedural safeguards – if followed – are valuable in that they allow for re-detention to effectuate removal, but only when officials have made a determination that the removal is significantly likely to happen in the reasonably foreseeable future. Further, the regulation provides the re-detained individual with notice and an opportunity to be heard. And this Court has found that 8 C.F.R. § 241.13 is a "regulation that protects fundamental due process rights." *Owdetallah v. Bondi*, No. CIV-25-1546-SLP, 2026 WL 483648, at *5 (W.D. Okla. Feb. 20, 2026); *see also Li v. Bondi*, No. CIV-25-1480-J, 2026 WL 475133, at *3 (W.D. Okla. Feb. 19, 2026) ("By mandating minimum procedures, the regulation ensures the individual is afforded the basic due process protections guaranteed by the Fifth Amendment.").

        **b.**      **The Government Did Not Adhere to the Procedures Contained in 8 C.F.R. § 241.13(i).**

Although he addresses it in relation to the third factor, Petitioner asserts, "in essence," he has not been provided with due process and the Respondents have not

followed their own procedures, such as those contained in 8 C.F.R. § 241.13(i). (Doc. 11, at 12).

Respondents argue that they complied with 8 C.F.R § 241.13(i)(2) because there were changed circumstances such that Petitioner's removal is significantly likely in the reasonably foreseeable future.[8] (Doc. 8, at 4-5). In support, they rely on the declaration of Christopher Hudson, an ICE deportation officer. (Doc. 8, at Ex. 1). Mr. Hudson makes the following statements regarding the removal of Zimbabwean citizens:

- Through February 17, 2026, ICE Enforcement and Removal Operations ("ERO") had removed 25 citizens of Zimbabwe to Zimbabwe in Fiscal Year 2026;

- In Fiscal Year 2025, 56 citizens of Zimbabwe were removed to Zimbabwe and 35 citizens of Zimbabwe had been removed to third countries; and

- In Fiscal Year 2024, 11 citizens of Zimbabwe were removed to Zimbabwe.

(*Id.* at 2-3). But "courts have found that such increase in frequency of removals alone does not demonstrate significant likelihood of removal in the reasonably foreseeable future." *Pham*, 2025 WL 3243870, at *2 (finding no significant likelihood of removal in the reasonably foreseeable future where 569 individuals were removed to Vietnam in 2025 compared to 58 such removals in 2024).

Mr. Hudson further noted that "there are currently no negotiations or arrangements with Zimbabwe that have been discussed at this time" and that "travel documents are currently pending with the Zimbabwe embassy in Washington, D.C." (Doc. 8, at Ex. 1, at

---

[8] Respondents also tie their argument that "there is a substantial likelihood of removal in the reasonably foreseeable future" to Petitioner's flight risk. (Doc. 8, at 9). They contend that the flight risk enhances the governmental interest at stake. (*Id.*)

14

3).  This evidence does not help Respondents' cause.  Instead, it highlights the lack of progress made toward Petitioner's removal.  Indeed, Mr. Hudson's declaration "is void of any meaningful, ongoing efforts by ERO to remove Petitioner to [Zimbabwe] during the period between his initial post-removal detention and his redetention."  *Khaliq v. Noem*, No. CIV-25-1154-SLP, 2026 WL 196631, at *8 (W.D. Okla. Jan. 26, 2026).  And Mr. Hudson's contention that Petitioner "is a priority for removal," (Doc. 8, at Ex. 1, at 3), appear to be little more than words without action.  In short, the government does not meet its burden by presenting evidence that tens of individuals have been removed to Zimbabwe in the past two-plus years and that travel documents have been pending with the embassy for some unknown amount of time.[9]

### 3.   Factor Three: The Government's Interest in Following Its Own Regulations Is Strong.

Petitioner frames the government's interest in "immigration detention" as "limited to ensuring removal and protecting the community." (Doc. 11, at 11).  Petitioner contends this interest does not outweigh his fundamental liberty interest in being free from detention. (*Id.* at 11-12).  Respondents argue that the government's interest is greater because "the power to admit or exclude aliens is a sovereign prerogative." (Doc. 12, at 14) (quoting *Landon v. Plasencia*, 459 U.S. 21, 32 (1982)).  So, they argue "the powers to control the Nation's borders and to regulate the entry of aliens are committed to the political branches of Government as matters of sovereignty." (*Id.* at 14-15).  And they contend there is a

---

[9] Respondents also never address Petitioner's claim regarding the lack of notice or reasons given for his re-detention, (Doc. 1, at 3), except as part of its general denial of Petitioner's allegations that are not specifically admitted in the response.  (Doc. 8, at 2).

strong interest in the prompt execution of removal orders because a non-citizen who is unlawfully in this country is violating United States law.  (*Id.* at 15).

The undersigned notes that the government's interest here is considerable.  Indeed, "Respondents have a substantial interest in ensuring that noncitizens, subject to a final order of removal, will be present when it is time for them to be removed."  *Ordoian v. Lyons*, No. 2:26-CV-00207-KWR-SCY, 2026 WL 594183, at *3 (D.N.M. Mar. 3, 2026)).  But the procedures in 8 C.F.R. § 241.13(i) exist and provide a guardrail against re-detaining an individual whose time to be removed is not significantly likely to occur in the reasonably foreseeable future.  Further, compliance with the regulations does not impose a significant cost or burden.  *See Le Nguyen*, 2026 WL 892491, at *8 ("The Court finds that Respondents have little to no interest in not following the procedure set forth in their own regulations.  While the Respondents surely have a strong interest in removing a person who is subject to a final order of removal, they have little to no interest in keeping a person in custody where they do not take action to remove them.").

### 4.    The *Mathews* Test Favors Petitioner, and His Immediate Release is Appropriate.

After consideration of the three *Mathews* factors, the undersigned finds Petitioner's due process rights were violated because the government did not comply with the procedures set forth in 8 C.F.R. § 241.13(i).  This finding is consistent with decisions from this Court finding that a violation of these procedures amounts to a due process violation.  *See Nguyen v. Bondi*, No. CIV-26-0056-HE, 2026 WL 1034405, at *1 (W.D. Okla. Apr. 16, 2026) ("The court joins the majority view, that the regulatory defects amount to due

16

process violations that entitled a petitioner to habeas relief.") (citation modified); *Owdetallah*, 2026 WL 483648, at \*5 (finding a violation of 8 C.F.R. § 241.13 amounts to a due process violation); *Li* 2026 WL 475133, at \*3 ("Petitioner's due process rights were violated as a result of Respondents' failure to comply with 8 C.F.R. § 241.13(i)(3) . . . ."); *Pham*, 2025 WL 3243870, at \*1 (failure to provide "written notice of the reasons for [the petitioner's] revocation" and a "failure to establish changed circumstances" amounts to a due process violation); *Hamidi v. Bondi*, No. CIV-25-1205-G, 2025 WL 3452454, at \*3 (W.D. Okla. Dec. 1, 2025) ("Under the facts and circumstances of this case, the undersigned agrees that ICE's violation of § 241.13(i) denied Petitioner the process to which he was entitled by law"). The undersigned finds that immediate release, under the terms of his prior order of supervision, is the appropriate remedy. *See Owdetallah*, 2026 WL 483648, at \*6 (ordering release under terms of prior order of supervision); *Pham*, 2025 WL 3243870, at \*2 (same).

**B.      Petitioner Did Not Meet His Burden on His Claim that His Re-Detention Violated 8 C.F.R. § 236.1(c).**

Count II alleges that re-detention under 8 C.F.R. § 236.1(c) is prohibited absent materially changed circumstances. (Doc. 1, at 7). Petitioner also notes that "detention under § 236.1(c) implements INA § 236(a)," which is codified at 8 U.S.C. § 1226. (*Id.* at 5). In the reply brief, Petitioner argued that Respondents did not "address what other changed circumstances required his re-detention [u]nder 8 C.F.R. § 236.1." (Doc. 9, at 3).

In the order requiring supplemental briefing, the undersigned noted that 8 C.F.R. § 236.1(c) does not contain the phrase "materially changed circumstances." (Doc. 10, at 2).

The regulation states that a non-citizen who has been released from custody may have their release "revoked at any time in the discretion of [ICE officials], in which event the alien may be taken into physical custody and detained." 8 C.F.R. § 236.1(c)(9). Further, 8 U.S.C. § 1226 does not address "changed circumstances," but does state that "the Attorney General at any time may revoke a bond or parole authorized under subsection (a), rearrest the alien under the original warrant, and detain the alien." *Id.* at 1226(b). But in the supplemental briefing, Petitioner simply restates that "under 8 C.F.R. § 236.1 re-detention absent materially changed circumstances is a violation of this Federal Regulation," (Doc. 11, at 8), without any attempt to explain why that is so when the regulation contains no such language.

In light of the statutory and regulatory text and Petitioner's failure to expand on his argument – despite given an extra opportunity to do so – the undersigned finds the claim should be denied because Petitioner did not meet his burden of showing entitlement to relief.

### C. New Claims in the Supplemental Briefing Are Not Properly Before the Court.

In Petitioner's supplemental briefing, he argued for the first time that the *Accardi* Doctrine requires an agency to adhere to its own regulations, (Doc. 11, at 8), and that Respondents violated the Administrative Procedure Act, (*id.* at 13). The undersigned does not consider these claims because the undersigned limited the supplemental briefing to the claims raised in the Petition. (Doc. 10, at 2-3). Additionally, Petitioner's supplemental briefing included arguments alleging a direct violation of 8 C.F.R. § 241.13, (Doc. 11, at

18

5-8), and that he is not removable due to his pending motion with the Board of Immigration Appeals, (*id.* at 8-9) – arguments first raised in his reply brief. The undersigned instructed Petitioner not to raise such arguments in his supplemental briefing because they are deemed waived. (Doc. 10, at 3 n.1). Therefore, the undersigned does not make a determination on these claims.

## V.    Recommendation and Notice of Right to Object

For the reasons discussed above, the undersigned recommends that the Petition (Doc. 1) be **GRANTED**. The undersigned recommends that the Court order Respondents **to release Petitioner from custody immediately**, under the terms of his previous Order of Supervision. *See Zadvydas*, 533 U.S. at 696 ("The choice, however, is not between imprisonment and the alien 'living at large.' It is between imprisonment and supervision under release conditions that may not be violated."). The undersigned further recommends that the Court order Respondents to certify compliance by filing a status report within three business days of the Court's order.

**The Court advises the parties of their right to object to this Report and Recommendation by May 22, 2026**, under 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).[10] The Court advises the parties that failure to make timely objection to this report

---

[10] Given the expedited nature of these proceedings, the undersigned has reduced the typical objection time to Report and Recommendations. *See* Fed. R. Civ. P. 72(b)(2) advisory committee's note to 1983 addition (noting that rule establishing 14-day response time "does not extend to habeas corpus petitions, which are covered by the specific rules relating to proceedings under Sections 2254 and 2255 of Title 28."); *see also Whitmore v. Parker*, 484 F. App'x 227, 231, 231 n.2 (10th Cir. 2012) ("The Rules Governing § 2254 Cases may be applied discretionarily to habeas petitions under § 2241" and that "while the Federal Rules of Civil Procedure may be applied in habeas proceedings, they need not be in every

and recommendation waives their right to appellate review of both factual and legal issues contained herein.  *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge and terminates the referral unless and until the matter is re-referred.

**ENTERED** this 15th day of May, 2026.

AMANDA L. MAXFIELD
UNITED STATES MAGISTRATE JUDGE

---

instance – particularly where strict application would undermine the habeas review process.”).